ROSENTHAL v. THE BARK DIE GARTENLAUBE, etc.

(*District Court, S. D. New York.* October 15, 1880.)

1. MARITIME LIEN—CLOTHING FURNISHED SEAMEN.

Clothing furnished seamen do not become a lien upon the vessel, unless needed by the seamen, and essential to the prosecution of the voyage.

2. WAGES—COLLUSION WITH MASTER TO CHEAT SEAMEN.

A party colluding with a master to cheat seamen out of a part of their wages, or to induce them to apply their wages in anticipation of payment to any purpose, not shown to be for their own good, will receive no relief in a court of admiralty.—[Ed.

In Admiralty.

*W. B. Beebe,* for libellant.

*Hill, Wing & Shoudy,* for claimants.

CHOATE, D. J. This is a libel brought against a foreign vessel to recover the price of certain clothing furnished to two of the crew while the vessel was lying in this port. The libel alleges that the vessel was "in need of materials and supplies, whereupon the libellant, at the request of her master, did furnish to and for the said vessel wearing apparel for the ship's slop chest, and clothing and materials for her crew, amounting in value to $55.50, which sum said master promised and agreed to pay;" that they were "furnished on the credit of the vessel, and became a lien thereon." The testimony on the part of the libellant tends to show the following facts: The vessel was in Brooklyn, discharging or about to discharge her cargo, when the libellant, a clothier, sent a man whom he employed, among other things, for soliciting business, to the vessel. This man saw the captain, and asked him if he could supply the sailors with clothing. The captain said he could if he would allow him, the captain, 10 per cent., and the captain said that he could supply each of the men to the amount of $50; that they had been on board a good while, and had plenty of money coming to them. The man agreed to pay the captain 10 per cent., and the captain said he would be responsible for the bills. Thereupon the man went among the sailors and asked them if they wanted clothing. Two of them said they did, but they had no money. The man went aft with them to the captain, who said they could have it to the amount of $50 apiece. Then the two sailors went with libellant's man to his store and selected clothing to the amount, together, of $55.50, which was sent the next day to the vessel and delivered to the captain, who gave it to the sailors.

At the time of the delivery the captain promised to pay the bill when the cargo was out. The libellant called on the captain several times for payment, but was put off on the pretext that he had not received his freight. He also told the libellant that the vessel was coming over to New York, where he should charter her for Valparaiso. Finally, the captain said he would pay the bill if the libellant would allow him 30

per cent., instead of 10, which libellant refused to do. The money not being paid, and before the vessel went to sea, she was libelled in this suit. The master, who was examined before leaving port, denied having purchased anything of the libellant. His deposition was taken before the libellant and his man testified, and claimants have had no opportunity to examine him in respect to the alleged conversations testified to by them. The proof on the part of the libellant is from the testimony of the libellant himself and his man.

Assuming the truthfulness of the libellant's witnesses, it is plain that the goods are not proved to be necessaries furnished to the vessel, and on its credit, for which the maritime law gives a lien. Necessary clothing for seamen may, of course, be as much necessary for the ship and for the successful prosecution of the voyage as food for the crew. But such is not proved in respect to the clothing furnished by the libellant. It appears by the declarations of the master testified to that the vessel had completed her voyage and was here discharging her cargo. Nothing appears with certainty as to any further voyage, except that she was here to be chartered for another voyage, but that she had not yet been chartered. Whether these seamen had shipped on terms binding them to serve on such further voyage or not is not shown. It is not, therefore, proved that they were any part of her crew in such sense that the furnishing of clothing to them could in any way be the furnishing of necessaries to the ship. Moreover, the proof falls short of establishing the essential fact that the sailors really needed the clothing. No safe inference of that fact can be drawn from the circumstance that upon the solicitation of the libellant they said they needed the clothing; and the improper and illegal agreement of the master, in stipulating for a percentage on the bills to be paid to himself, takes from the circumstance of his assenting to their being supplied any possible inference that might be otherwise drawn therefrom, that what the master has himself ordered in the due course of his employment, being within the class of proper ship's supplies, should *prima facie,* as against the owners, be deemed necessaries.

It is urged that the furnishing of these clothes may be regarded as a mode of advancing money to pay the wages of the crew. But to this there are several answers: *First,* the suit is not brought for advances to the ship to pay wages. *Secondly,* the master is not shown to have been in want of money for this purpose. The contrary appears, and was known to the libellant; he was told there was freight money coming sufficient for the purpose. *Thirdly,* a party colluding with a master to cheat the seamen out of a part of their wages, or to induce them to apply their wages in anticipation of payment to any purpose not shown to be for their own good, will receive no relief in a court of admiralty. Of course, after they are paid their wages they can expend the money as they like; but payment in anything else than money, though with their consent, will be most rigidly scrutinized, and must be clearly shown to be proper and equivalent to the payment of the money itself to them.

Libel dismissed, with costs.